# CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

v.

Richard Wade

February 22, 1999

Case No. CR98-2158

BY JUDGE ROBERT P. DOHERTY, JR.

Defendant has moved to suppress statements made by him, alleging that he was not advised of his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436 (1966), after he was taken into custody on a grand larceny charge. The Commonwealth argues that Defendant's initial statements were made during the course of a non-custodial interrogation.

Both sides agree that if the Defendant was in custody and gave a statement prior to having been given his Miranda warnings, that statement would not be admissible. They also do not disagree that if in fact the Defendant's initial questioning was custodial and without Miranda warnings, the dictates of *Hall v. Commonwealth*, 22 Va. App. 226 (1996), would apply and the Commonwealth would be prohibited from using the Defendant's later statement given at the police station after he was advised of his Miranda rights because it would amount to an "exploitation of the initial illegality ... ." The issue, therefore, is nothing more than a factual determination of when the Defendant was placed in custody.

Officer Lucas observed Defendant's vehicle parked near a closed electric supply company, at 10:00 o'clock p.m., with the rear door of the vehicle open, electric cable on the floor of the vehicle, additional electric cable partially pulled through a chain link fence which surrounded the electric supply company's storage yard, and a female sitting in the front passenger seat. The vehicle operator was not around. The female passenger advised the officer that

her husband, Richard Wade, drove her to that location and had just then walked away. Officer Lucas radioed a request for Officer Adkins to patrol the area to see if he could locate Defendant, giving Defendant's name and description, and to ask if Defendant would return to the scene to talk to Officer Lucas.

Officer Adkins, with another officer in the vehicle, rapidly located Defendant walking a few blocks away and noted that he was sweating heavily. He asked the Defendant his name and asked to see his driver's license to verify his identification. Without first returning the driver's license, he asked Defendant if he would return to the scene and talk with Officer Lucas. Defendant consented to the request, voluntarily got into the back seat of the police car, and was driven to the electric supply company to talk to Officer Lucas. Upon his arrival, Defendant was asked by Officer Lucas if he had taken the cable from the electric supply company. The Defendant responded that he had. He said that he had climbed the fence to get the cable and had cut his arm while doing so. Officer Lucas then placed the Defendant under arrest for larceny of the cable. After being transported to the jail, the Defendant was advised of his Miranda warnings and again gave incriminating statements to Officer Lucas.

The Defendant acknowledges that the officers asked him to return to talk to Officer Lucas but that because there were two uniformed officers, one of whom still had his driver's license, he felt he was not free to leave even though no restraints were used on him. He further testified that there were three or four officers at the electric supply company when he arrived with Officer Adkins and therefore, he believed that he was not only not free to leave but that he was a suspect who was being accused of a crime. On cross-examination, the Commonwealth's Attorney showed the Defendant's extensive knowledge of arrest procedures based upon his lengthy and voluminous lifelong criminal history.

The retention of the Defendant's driver's license by Officer Adkins, while asking the Defendant if he would be willing to return to the electric supply company, is a factor to be considered in determining the voluntariness of the Defendant's actions. It is not, however, as significant a factor as it would have been had he been operating a motor vehicle when he delivered his license to the officer. *Richmond v. Commonwealth*, 22 Va. App. 257, 261 (1996). Other factors identified in the Defendant's argument include, but are not limited to, the number of officers present, the fact that they wore police uniforms and had holstered weapons, and the time of night that all this took place. One factor surely considered by the Defendant that night was the fact that if he did not

return to the scene and confess, his wife, whom he had left "holding the bag," may well have been arrested.

Taking into consideration the credibility and demeanor of the witnesses, the Court is of the opinion that the officers reasonably asked the Defendant to voluntarily consent to assist them in the investigation of a crime. Had the Defendant refused, he would have been free to leave. A reasonable citizen under the circumstances that existed at that time would not feel that he had been seized or taken into custody or that he had been coerced in any way to cooperate. A reasonable person would have felt free to refuse the police officer's request and to walk away. The Defendant was not in custody when he voluntarily returned to talk to Officer Lucas. The statements he made in response to the questions of Officer Lucas were voluntary admissions. The Court further finds that the testimony of the Defendant as to his belief that he was in custody is a product of studied reflection and not a true recitation of his thoughts on the night of his arrest.

The Defendant's motion to suppress his incriminating statements is denied.